UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| PETER ANGELLE | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-7707 |
| SPARTAN OFFSHORE DRILLING LLC | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is Plaintiff Peter Angelle's motion seeking to exclude the opinions of Defense expert Kerry P. Redmann, Jr. R. Doc. 53. Defendant Spartan Offshore Drilling, LLC ("Spartan") opposes the motion. R. Doc. 56. Plaintiff has filed a reply. R. Doc. 61. The Court now rules as follows.

### I. BACKGROUND

This maritime personal injury case arises from injuries Plaintiff Peter Angelle allegedly sustained while aboard the SPARTAN 208, a jack-up drilling vessel owned, operated, and controlled by Defendant Spartan Offshore Drilling, LLC ("Spartan"). R. Doc. 22 at ¶ 3.[1] Plaintiff asserts that on or about July 18, 2017, while checking the filtration unit on the vessel, he "tripped on a packer stem sticking out of a pallet stowed near the filter unit . . . . fell forward into a hand rail, lost his footing and fell to the vessel deck." *Id.* at ¶¶ 5–6. Plaintiff claims the incident caused injuries to his lumbar and cervical spine, right shoulder and connective joints, tissues, and nerves, which require medical care, treatment, and surgery. *Id.* at ¶ 7.

---

[1] Although Plaintiff initially brought this action pursuant to the Outer Continental Shelf Lands Act, general maritime law, and the Jones Act against Spartan and Plaintiff's employer Gordon Reed & Associates ("GRA")—which the Court dismissed on June 18, 2018, R. Doc. 16—Plaintiff has since amended his complaint and now brings his claims pursuant to Federal Rule of Civil Procedure 9(h), thereby waiving his right to a jury trial, R. Doc. 22 at 3. *See T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587–88 (5th Cir. 1983).

Plaintiff asserts his injuries were caused by Spartan's negligent "fail[ure] to act with due care under the circumstances," "fail[ure] to provide plaintiff with a safe work place free of unreasonably dangerous hazards aboard its vessel," and "the vessel negligence of the SPARTAN 208." *Id.* at ¶ 8. Due to Spartan's alleged negligence, Plaintiff seeks "damages for past, present and future physical and emotional pain and suffering, permanent physical disability and scarring, past and future medical expenses, loss of wages and wage earning capacity, and loss of fringe benefits in an amount to be determined in this cause." *Id.* at ¶ 9.

Relevant to the instant motion, Spartan retained Mr. Kerry Redmann, P.E., a petroleum engineer, "to develop opinions as to the probable causes of the incident, and to respond, as appropriate, to allegations from the plaintiff's experts." R. Doc. 53-8 at 3. As part of his investigation, on May 21, 2019, Mr. Redmann visited the SPARTAN 208, which at the time was under contract with Cox Operating and located in West Delta Block 29. *Id.* at 5. In his report, Mr. Redmann offers eleven opinions:

(1) Mr. Angelle, "should have known he was well within a work area and not a designated walkway," and should have paid "the utmost attention as trip hazards, low hanging equipment, and tight passaged abound," *id.* at 8–9;
(2) "The work area in question was sufficiently lit for any conscientious worker to navigate," *id.* at 9;
(3) Mr. Angelle "ignored" "[t]he safety protocol continually reinforced by Spartan Offshore Drilling, LLC," *id.*;
(4) "Walter Oil & Gas Corporation's Master Service Contract with Gordon Reed & associates, Inc. . . . indemnified Walter Oil & Gas from this civil action. Likewise, Spartan Offshore Drilling, LLC's Master Drilling Contract with Walter Oil & Gas . . . indemnified Spartan Offshore Drilling, LLC from this civil action. Gordon Reed & Associates, Inc [*sic*] is responsible for Mr. Angelle," *id.* at 10;
(5) "The packer stem," that Mr. Angelle allegedly tripped on was "not in a walkway but a work area," and, because "the path of departure from his filtration unit . . . require[ed] him to step over obstacles," "Mr. Angelle's negligence . . . caused the incident and his own resulting injuries," *id.*;
(6) "The packer stem," that Mr. Angelle allegedly tripped on was "not in a walkway but a work area," and, because "the path of departure from his filtration unit . . . require[ed] him to step over obstacles," "Mr. Angelle's negligence . . . caused the incident and his own resulting injuries," *id.* at 11;

2

(7) "The packer stem," that Mr. Angelle allegedly tripped on was "not in a walkway but a work area," and, because "the path of departure from his filtration unit . . . require[ed] him to step over obstacles," "Mr. Angelle's negligence . . . caused the incident and his own resulting injuries," *id.*;[2]
(8) "Mr. Byers was not definitive in his testimony and it sometimes contradicted [the testimony] given by Mr. Angelle . . . . Mr. Byers stated the visibility conditions weren't bad," and "discussed 'squeezing' through equipment in the work area and stepping over a hose," *id.* at 12;
(9) "Mr. Angelle reinforced that he went through an orientation upon his arrival at the rig," "stated that he did attend the safety meeting the day of the incident," and "stated that he didn't think it was necessary to utilize a head lamp or flashlight just to move the air pump," *id.* at 13;
(10) "Mr. Hester" who has "worked on Rig 208 for over six years and has held the position of Safety and Compliance Specialist for four years," testified that "the incident occurred in a work area not a walkway," that "the space on the Spartan Rig 208 is limited," and that "the RTTS tool on the pallet was not considered a trip hazard as equipment in the work area would not be so considered," *id.* at 14;
(11) Mr. McGehee testified that Mr. Angelle's incident occurred in a work area and not a walkway, *id.* at 16.

On June 18, 2019, Spartan produced to Plaintiff Mr. Redmann's expert report. R. Doc. 56 at 1.

## II. PRESENT MOTION

Plaintiff moves the Court to exclude the opinions of Defendant's proffered expert, Kerry P. Redmann, Jr. R. Doc. 53. In support of his motion, Plaintiff contends Mr. Redmann's opinions will not assist the trier of fact in rendering a judgment, are not based on specialized knowledge, do not rise above the level of common sense, and constitute impermissible legal conclusions. R. Doc. 53-1. Notably, Plaintiff does not challenge Mr. Redmann's credentials or expert methodology. *Id.*

In opposition, Defendant argues Mr. Redmann's opinions are not merely commonsense conclusions; rather, Defendant argues, Mr. Redmann's opinions reflect his specialized knowledge of rigs and will assist the Court in rendering its findings of fact and conclusions of law. R. Doc. 56 at 1. Specifically, Spartan argues Mr. Redmann "will assist this Honorable Court in understanding the distinction between walkway and work area, and why that distinction is important in

---
[2] Mr. Redmann's fifth, sixth, and seventh opinions are identical. The Court repeats them to accurately reflect Mr. Redmann's expert report.

understanding liability. He will also assist in determining whether the proper safety protocols onboard a drilling rig were followed and identifying the probable causes of the incident at hand." *Id.* at 6.

### III. LAW & ANALYSIS

Federal Rule of Evidence 702 provides that an expert witness may offer an opinion at trial if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Trial Courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). If there is a good chance the factfinder will be "[un]familiar with offshore rigs . . . Plaintiff's proposed expert will be helpful in providing the [factfinder] with the background [it] will need to understand the evidence presented at trial." *McMullin v. BP Oil Expl. & Prod.*, No. 12-1206, 2013 WL 2556032, at *7 (E.D. La. June 10, 2013).

However, an expert opinion is not needed when it amounts to "nothing that an ordinary factfinder, using common sense and general knowledge, could not also adequately assess." *Gayle v. La. Dock Co.*, No. 99-3110, 2000 WL 1059815, at *2 (E.D. La. July 31, 2000). For example, in *Peters v. Five Star Marine Service*, the Fifth Circuit upheld the trial Court's exclusion of an expert who would testify as to "the [Defendant's] obligation to keep the deck clean of diesel fuel and to keep cargo properly stowed, [as well as] the hazards of offloading a vessel." 898 F.2d 448, 450 (5th Cir. 1990). There, the Fifth Circuit concluded this opinion was "unnecessary," as "the jury could adeptly assess this situation using only their common experience and knowledge." *Id.* at 449–50; *see also Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645 (E.D. La. Mar. 3, 2003) (excluding expert testimony that included a summary of facts from testimony and citations

4

to regulations because no expertise was needed to reach the opinion). Furthermore, experts may not provide "legal conclusions or . . . simply tell the jury what result to reach." *Fulford v. Manson Const. Co.*, No. 09-3946, 2010 WL 1903865, at *1 (E.D. La. May 7, 2010) (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981)); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).

When a case is set to proceed as a bench trial, such as the case at bar, "the Court's 'gate-keeper' role is diminished . . . because there is no need to protect the jury and risk tainting the trial by exposing the jury to unreliable evidence." *Kinnerson v. Arena Offshore, LP*, No. 16-720, 2019 WL 2571627, at *1 (W.D. La. June 21, 2019). "However, the mere fact that a case is being tried as a bench trial does not completely remove the Court's gate-keeping role." *Id.*, at *2; *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010). Thus, although the Court's role as "gate-keeper" is lessened, it must nevertheless faithfully apply Rule 702 and the requirements announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

### A. Application

Plaintiff moves to exclude each of Mr. Redmann's expert opinions, arguing they are commonsense conclusions, constitute impermissible legal opinions, or merely recount other witnesses' testimony. The Court groups them accordingly and evaluates each of Mr. Redmann's proffered opinions in turn.

#### a. Mr. Redmann's First through Third and Fifth through Seventh Opinions

Plaintiff contends Mr. Redmann's first, second, third, fifth, sixth, and seventh opinions should be excluded, as Mr. Redmann did not use any specialized knowledge in rendering them and therefore, these opinions will not assist the Court in understanding the issues involved in this case. Spartan disagrees, arguing Mr. Redmann's opinions regarding "the particulars of the equipment,

5

the distinction between a work area and a designated walkway (and the importance of that distinction) and compliance with the applicable maritime and offshore safety . . . . are not within the typical knowledge of the fact finder." R. Doc. 56 at 5.

In his first opinion, Mr. Redmann states Mr. Angelle's accident took place in a work area, that Mr. Angelle should have known he was in a work area and, that therefore, Mr. Angelle should have been paying "the utmost attention" to his surroundings. R. Doc. 53-8 at 8–9. In his report, Mr. Redmann explains designated walkways are "unobstructed escape routes from the stern (where the derrick package is located) to the bow," while workspaces "usually remain[] crowded with equipment and supplies." *Id.* at 5. Mr. Redmann also states that the "[d]esignated walkways on Rig 208 . . . are rather obvious." *Id.* As Mr. Redmann's testimony makes clear, distinguishing between a workspace and a walkway does not require any specialized knowledge. Mr. Redmann further explains crewmembers should pay greater attention while in a work area, as opposed to a walkway, because in work areas "equipment spotted on the deck is usually in close proximity to other equipment in use." *Id.* That a person should pay closer attention to an area cluttered with "trip hazards, low hanging equipment, and tight passages," *id.* at 8, is a common-sense conclusion that does not require expert explanation. As a result, the Court will exclude Mr. Redmann's first opinion.

In his second opinion, Mr. Redmann contends "[t]he work area in question was sufficiently lit for any conscientious worker to navigate." *Id.* at 9. As Mr. Redmann notes in his report, he visited the SPARTAN 208 on May 21, 2019 in "the middle of the day," while it was being operated by a new customer and located in a different port. *Id.* at 5, 7. Plaintiff argues, therefore, that Mr. Redmann's observations are not relevant, noting that the accident in question took place in the very early morning of July 18, 2019 "nearly two years" before Mr. Redmann's inspection. R. Doc. 53-1 at 3. Plaintiff further contends that whether an area is sufficiently lit does not require any

6

specialized knowledge. *Id.* at 4. In its opposition, Spartan points out that the location of the light fixtures and the type of lighting used on the SPARTAN 208 has remained unchanged since the accident. R. Doc. 56 at 7. Therefore, Spartan argues, "[Mr.] Redmann's opinions on lighting . . . are both current and relevant." *Id.*

Mr. Redmann bases his opinion on whether there was sufficient lighting in the area in which the incident occurred on photographs of the area taken in the evening as well as his personal observations of the area in the afternoon. The Court is capable of viewing the pictures of the area taken under conditions similar to when the incident occurred, and Mr. Redmann's opinion as to whether the area is sufficiently lit during the day time is not relevant, helpful, or necessary here. As a result, the Court will exclude Mr. Redmann's second opinion. The Court notes, however, that Mr. Redmann did visit the scene and noted the location and wattage of the lighting in the area in which the incident occurred. Thus, the Court will permit Mr. Redmann to testify, as a fact witness, as to his observation that, "well above the work area, a bright, 400 watt LED light was focused on the yellow-painted top of the hatch." R. Doc. 53-8 at 9.

In his third opinion, pointing to Mr. Beyers' and Mr. Angelle's deposition testimony, Mr. Redmann opines that Mr. Angelle repeatedly ignored Spartan's safety protocol. R. Doc. 53-8 at 9. Plaintiff argues this opinion is "not based on any scientific knowledge and is merely a 'common sense' observation if it were correct." R. Doc. 53-1 at 8. The Court agrees. No specialized knowledge is required to assess the testimony of Mr. Angelle and Mr. Beyers, nor is such knowledge required to determine whether Mr. Angelle's conduct violated Spartan's safety protocol. Because this Court "is capable of understanding [defendant's] job safety policies and applicable regulations, and whether those policies and regulations were violated," the Court will exclude Mr. Redmann's third opinion. *See Facille v. Madere & Sons Towing, Inc.*, No. 13-6470, 2014 WL 127190979, at *4 (E.D.

7

La. Nov. 26, 2014).

### b. Mr. Redmann's Fourth through Seventh Opinions

Plaintiff argues Mr. Redmann's fourth, fifth, sixth, and seventh opinions are legal conclusions that should be excluded from trial. R. Doc. 53-1 at 4, 10. In its opposition, Spartan does not appear to oppose Plaintiff's characterization of these opinions. *See* R. Doc. 56.

In his fourth opinion, Mr. Redmann states, "Walter Oil & Gas Corporation's Master Service Contract with Gordon Reed & associates, Inc. . . . indemnified Walter Oil & Gas from this civil action. Likewise, Spartan Offshore Drilling, LLC's Master Drilling Contract with Walter Oil & Gas . . . indemnified Spartan Offshore Drilling, LLC from this civil action. Gordon Reed & Associates, Inc [*sic*] is responsible for Mr. Angelle." R. Doc. 53-8 at 10. This opinion is precisely the kind of legal conclusion an expert, particularly an expert in the field of engineering, may not offer. *See Owen*, 698 F.2d at 240. As a result, the Court will not permit Mr. Redmann to offer this opinion at trial.

In his fifth, sixth, and seventh opinions, Mr. Redmann contends "[t]he packer stem," Mr. Angelle allegedly tripped on was "not in a walkway but a work area," and, because "the path of departure from his filtration unit . . . require[ed] him to step over obstacles," "Mr. Angelle's negligence . . . caused the incident and his own resulting injuries." R. Doc. 53-8 at 10–11. As the Court previously stated, distinguishing between a walkway and a work area requires no more than a common-sense evaluation of the circumstances. Thus, Mr. Redmann's expert opinion on the distinction will not assist the trier of fact in rendering its findings of fact. Moreover, with respect to Mr. Redmann's testimony as to whether Mr. Angelle's negligence contributed to his injuries, "[t]he question of whether a party's acts or omissions constitute 'negligence' under the law calls for a legal conclusion." *Fulford*, 2010 WL 1903865, at *1 ("Issues of general safety and negligence are well within the province for a jury to decide without the aid of an expert."). As a result, the

Court will exclude Mr. Redmann's fifth, sixth, and seventh opinions at trial.

### c. Mr. Redmann's Eighth through Eleventh Opinions

Finally, Plaintiff argues Mr. Redmann's remaining opinions "are nothing more than resuscitations [*sic*] of deposition testimony and offer no assistance to the trier of fact." R. Doc. 53-1 at 9. The Court agrees. In his eighth, ninth, tenth, and eleventh opinions, Mr. Redmann simply restates favorable portions of other witnesses' deposition testimony. For example, in his tenth opinion, Mr. Redmann relays that Mr. Hester testified that "the incident occurred in a work area not a walkway," and that "the space on the Spartan Rig 208 is limited." R. Doc. 53-8 at 14. Whether Redmann's testimony is admissible in this bench trial hinges on whether Redmann's testimony brings any more to the Court than the lawyers might offer in argument. *See Geautreaux v. Tetra Applied Techs., LLC*, No. 08-4645, 2010 WL 3952260, at *2–3 (E.D. La. Oct. 6, 2010) (excluding expert testimony where "[t]he majority of [the] report consists of facts mirrored from witness depositions and the legal conclusions [the expert] draws from those facts"). Simply restating what other witnesses have testified to is not helpful to the trier of fact. As a result, the Court will not permit Mr. Redmann to offer opinions five through eleven at trial.

## IV. CONCLUSION

**IT IS ORDERED** that Plaintiff Peter Angelle's motion to exclude the opinions of Defense expert Kerry P. Redmann, Jr., R. Doc. 53, be and hereby is **GRANTED**.

New Orleans, Louisiana, this 31st day of July, 2019.

_____
UNITED STATES DISTRICT JUDGE