# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PETER ANGELLE | CIVIL ACTION |
| VERSUS | NO. 17-7707 |
| SPARTAN OFFSHORE DRILLING LLC | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is a motion to continue filed by Defendant Spartan Offshore Drilling, LLC ("Spartan"). R. Doc. 58. Plaintiff Peter Angelle opposes the motion. R. Doc. 62. Spartan has filed a reply. R. Doc. 68. The Court discussed the matter with counsel during a telephone status conference on July 26, 2019. R. Doc. 66. The Court now rules as follows.

## I. BACKGROUND

This maritime personal injury case arises from injuries Mr. Angelle allegedly sustained while aboard the SPARTAN 208, a jack-up drilling vessel owned, operated, and controlled by Spartan. R. Doc. 22 at ¶ 3.[1] Mr. Angelle asserts that on or about July 18, 2017, while checking the filtration unit on the vessel, he "tripped on a packer stem sticking out of a pallet stowed near the filter unit . . . . fell forward into a hand rail, lost his footing and fell to the vessel deck." *Id.* at ¶¶ 5–6. Mr. Angelle claims the incident caused injuries to his lumbar and cervical spine, right shoulder and connective joints, tissues, and nerves, which require medical care, treatment, and surgery. *Id.* at ¶ 7.

---

[1] Although Mr. Angelle initially brought this action pursuant to the Outer Continental Shelf Lands Act, general maritime law, and the Jones Act against Spartan and Mr. Angelle's employer Gordon Reed & Associates ("GRA")—which the Court dismissed on June 18, 2018, R. Doc. 16—Mr. Angelle has since amended his complaint and now brings his claims pursuant to Federal Rule of Civil Procedure 9(h), thereby waiving his right to a jury trial, R. Doc. 22 at 3. *See T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587–88 (5th Cir. 1983).

Mr. Angelle asserts his injuries were caused by Spartan's negligent "fail[ure] to act with due care under the circumstances," "fail[ure] to provide [him] with a safe work place free of unreasonably dangerous hazards aboard its vessel," and "the vessel negligence of the SPARTAN 208." *Id.* at ¶ 8. Due to Spartan's alleged negligence, Mr. Angelle seeks "damages for past, present and future physical and emotional pain and suffering, permanent physical disability and scarring, past and future medical expenses, loss of wages and wage earning capacity, and loss of fringe benefits in an amount to be determined in this cause." *Id.* at ¶ 9.

Following the accident, Mr. Angelle was treated at an Urgent Care clinic and was eventually referred to Dr. Patrick Juneau, a neurosurgeon in Lafayette, LA, who Plaintiff began treating with for his spinal injuries on August 10, 2017. R. Doc. 62 at 1. Dr. Juneau ordered an MRI of Mr. Angelle's lumbar spine, which took place on August 22, 2017. *Id.* After reviewing the results of the MRI, on September 14, 2017, Dr. Juneau stated,

> As I look at this MRI, to my eye he has a little foraminal narrowing on the right side at the L4-5 level. This is seen on axial image #19. I do not see a disc herniation at any level in the lumbar spine. I think that his lumbar symptoms are most likely related to a lumbar radiculopathy resulting from some inflammation in the nerve root exiting at the right L4-5 level.

R. Doc. 58-5 at 1. As a result of this MRI, Dr. Juneu recommended Mr. Angelle "undergo some outpatient physical therapy to his lower back" and "a series of lumbar epidural steroid injections." *Id.* Mr. Angelle underwent a steroid injection on December 20, 2017. R. Doc. 58-1 at 3.

Mr. Angelle returned to Dr. Juneau on April 4, 2018. *Id.* At this visit, Mr. Angelle reported that "the lumbar injection did improve his symptoms for about a day and then the pain came right back," but that he "d[id] not want to undergo anymore of these steroid injections because he d[id] not think it is a longlasting cure." *Id.* Dr. Juneau then re-reviewed Mr. Angelle's August 22, 2019 MRI, finding Mr. Angelle "d[id] have symptoms of a right L5 radiculopathy, resulting from a disc

2

protrusion at the right L4-5 level." R. Doc. 58-6 at 1. As a result, Dr. Juneau recommended more physical therapy, but stated that, if physical therapy was not successful, he would recommend a right L4-5 microdiscectomy +/- L4/L5 bilateral decompressive laminectomy and posterior lumbar fusion. *Id.*

On August 23, 2018, Plaintiff underwent an independent medical evaluation ("IME") with Dr. Christopher Cenac, Sr. in Houma, Louisiana. R. Doc. 62 at 2. Dr. Cenac issued his initial report on August 23, 2018 and a supplemental report on October 31, 2018. *Id.* In his supplemental report, Dr. Cenac stated his opinion regarding Mr. Angelle's August 22, 2017 MRI, finding "[t]here [wa]s no evidence of an acute traumatic structural spinal or disc injury on either imaging study." R. Doc. 62-2 at 1. Attached to its motion, Spartan provided a picture of Mr. Angelle wearing a back brace on the day of his IME with Dr. Cenac; however, Spartan also provided a picture of Mr. Angelle the day before the IME in which he was not wearing the brace. R. Doc. 58-1 at 5–7.

On December 11, 2018, Plaintiff saw Dr. Ilyas Munshi, another neurosurgeon in Lafayette, LA, at the request of Dr. Juneau. R. Doc. 62 at 2. In his report from the visit, Dr. Munshi provided his interpretation of the August 22, 2017 lumbar MRI: "Lumbar Spine MRI Interpretation Findings consistent with spondylolisthesis are noted at L4-5 and Grade 1. Findings consistent with herniated nucleus pulposus are noted at L4-5 (right), small in size and moderate in size." *Id.* at 3. In the same report, Dr. Munshi also stated, "[Mr. Angelle's] scans show a herniation at L4/5 with a slip," and concurred with Dr. Juneau's surgery recommendation. *Id.* Mr. Angelle underwent surgery on December 26, 2018, which was performed by Dr. Juneau and Dr. Ilyas.

Spartan deposed Dr. Juneau on June 25, 2019. R. Doc. 58-1 at 4. During this deposition, Spartan asked Dr. Juneau "how he found no disc herniation on September 14, 2017, but then found a disc protrusion on April 4, 2018," to which Dr. Juneau replied:

3

      **A**. [A protrusion and a herniation] mean different things to different doctors.
      **Q**. What do they mean to you, Doctor?
      **A**. I would reserve a herniation for a larger -- the large -- a large disc rupture, and a protrusion somewhat smaller. But there is no consensus as to what defines a herniation versus a protrusion.

R. Doc. 58-1 at 4.[2]

Spartan also deposed Dr. Munshi on June 25, 2019. *Id.* at 5. During his deposition, Dr. Munshi stated that he "agree[d] with Dr. Juneau that there was a little narrowing on the right side at L4-5 of a small to moderate nature, and at least from the pictures itself, looking at the MRI, there was a little slip at L4-5." R. Doc. 58-3 at 20:11–15. Dr. Munshi also stated, however, that he "disagree[d] with the whole MRI," because "[Mr. Angelle] ha[d] narrowing and pressure on the right side at L4-5, and there's a little slip at L4-5." *Id.* at 21:6.

## II. CURRENT MOTION

As a result of Drs. Juneau's and Munshi's deposition testimony, Spartan retained Dr. Bernard Landry, M.D., a radiologist, to review Mr. Angelle's August 22, 2017 MRI. R. Doc. 58-1 at 2. Because Spartan retained Dr. Landry after the expert report deadline passed on June 24, 2019, *see* R. Doc. 33 at 2, Spartan filed a motion seeking an extension of this deadline on July 17, 2019, R. Doc. 58. Spartan contends the extension is necessary, as "discovery depositions on June 25, 2019 revealed Plaintiff's two neurosurgeons disavowed the MRI report that they had previously ordered." R. Doc. 58-1 at 1. Accordingly, Spartan moves the Court to extend its expert report deadline until July 19, 2019 "solely for the purpose of retaining a rebuttal radiologist expert, Dr. Bernard Landry, M.D.," to "determine what the only objective evidence of the MRI films actually depict." *Id.* at 2, 8.

---

[2] This quoted language comes from Spartan's motion. In its motion, Spartan cites its Exhibit "A"; however, although Exhibit A is Dr. Juneau's deposition testimony, the quoted language does not appear in this exhibit. *See* R. Doc. 58-2.

4

In opposition, Mr. Angelle points out that in his April 4, 2018 report, Dr. Juneau changed the initial opinion of the MRI he offered on September 14, 2017, when he stated "Thus, at this point, I do think that the patient does have symptoms of a right L5 radiculopathy, resulting from a disc protrusion at the right L4-5 level." R. Doc. 62 at 1–2. Mr. Angelle represents that he provided this report to Spartan on April 9, 2018 and that he provided Spartan with Mr. Munshi's report on December 12, 2018. *Id.* at 2–3. Mr. Angelle also points out that Spartan's expert Dr. Cenac, who had the opportunity to read his August 22, 2017 MRI, concluded "[t]here is no evidence of an acute traumatic structural spinal or disc injury on either imaging study." *Id.* at 2. Ultimately, Mr. Angelle argues Spartan has failed to show good cause for the extension, as the information Spartan obtained from Drs. Juneau and Munshi was not new and allowing Spartan to include an additional report from Dr. Landry would simply bolster Dr. Cenac's testimony. *Id.* at 5.

### III. LAW & ANALYSIS

Federal Rule of Civil Procedure 16 provides that, once the court issues a scheduling order, "[it] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Moreover, this Court's scheduling order, consistent with Rule 16, states "Deadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon timely motion filed in compliance with Local Rules and upon a showing of good cause. Continuances will not normally be granted." R. Doc. 33 at 3.

To show "good cause" the party seeking modification must show the deadlines could not "reasonably be met despite the diligence of the party needing the extension." *S & W Enter., LLC v. S. Trust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). Courts in this circuit consider four factors in determining whether good cause exists for the extension: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential

5

prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

### a. Spartan could have timely obtained Dr. Landry's report

Spartan contends Drs. Juneau's and Munshi's testimony prompted its need to retain Dr. Landry. Reviewing their reports and deposition testimony, however, Spartan knew the doctors did not initially make a surgery recommendation but, as Mr. Angelle's December 2018 surgery made clear, the doctors had changed their analysis. *Compare* Juneau Sept. 14, 2017 Ex. Report ("I do not see a disc herniation at any level in the lumbar spine."), *with* Juneau April 4, 2018 Ex. Report (finding Mr. Angelle had "a disc protrusion at the right L4-5 level"). Spartan acknowledges as much in its reply, noting it did not have the opportunity to "attempt to *reconcile* Dr. Juneau's two opinions on the same MRI films." R. Doc. 68 at 2 (emphasis added).

Spartan contends it retained Dr. Landry to "determine what the only objective evidence of the MRI films actually depict." R. Doc. 58-1 at 8. Dr. Juneau's June 25, 2019 testimony did not make such an opinion necessary—Spartan knew of Dr. Juneau's apparently conflicting opinions as early as April 9, 2018, when Mr. Angelle provided Spartan with Dr. Juneau's April 4, 2018 report. As a result, the Court finds Spartan's stated reason for needing the extension is not well taken. *See Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 37 (5th Cir. May 9, 2012).

### b. Dr. Landry's report would likely be duplicitous of Dr. Cenac's testimony

As Mr. Angelle points out in his opposition, he underwent an IME with Spartan's chosen doctor, Dr. Cenac, on August 23, 2018. R. Doc. 62 at 2. On October 31, 2018, Dr. Cenac issued a supplemental report detailing his reading of Mr. Angelle's MRI and finding, in his opinion, that Mr. Angelle had not suffered "an acute traumatic structural spinal or disc injury." R. Doc. 62-2 at

1. Dr. Cenac, a respected orthopedic surgeon, is qualified to read an MRI and render his opinion thereof. Although Dr. Landry's testimony likely would have been admissible had it been timely provided, his reading of Mr. Angelle's MRI likely concurs with Dr. Cenac's findings and would therefore be a duplicitous opinion. Moreover, Dr. Cenac's opinion and what Spartan perceives as Dr. Juneau's change in his opinion are fodder for cross examination, particularly in a case that will proceed as a bench trial. As a result, the Court concludes Dr. Landy's testimony is not necessary for trial. *See Matter of M&M Wireline & Offshore Servs., LLC*, No. 15-4999, 2016 WL 4679937, at *6 (E.D. La. Sept. 7, 2016).

### c. Mr. Angelle would be prejudiced by the continuance

As Mr. Angelle notes in his opposition, "trial preparations are in full swing, and the admission of another expert will force the parties to expend additional time, money, and resources." R. Doc. 62 at 7. Dr. Landry would need to be deposed, and Mr. Angelle submits he would likely file a *Daubert* motion seeking to exclude Dr. Landry's testimony as duplicitous of Dr. Cenac's. Thus, the Court finds Mr. Angelle would be prejudiced by granting Spartan's motion to continue the expert report deadline. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998) (finding an abuse of discretion for trial court judge to allow an untimely designated expert to testify in part because the "sudden designation left the [Plaintiff] with an inadequate opportunity to adapt the presentation of their case in light of his testimony").

### d. Continuing the trial would not cure the prejudice to Mr. Angelle

One potential remedy that could cure some of the prejudice to Mr. Angelle would be to continue the trial to allow sufficient time for Dr. Landry to be deposed. However, this case has been pending since 2017. Indeed, the trial of this matter has been continued twice since its filing. *See* R. Docs. 17, 32. Moreover, continuing the trial would not cure the monetary prejudice Mr.

7

Angelle might suffer as a result of granting Spartan's motion to continue. Accordingly, the Court finds continuing the trial of this matter for a third time would not cure the prejudice to Mr. Angelle. *See Reliance Ins. Co.*, 110 F.3d at 257.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Spartan Offshore Drilling, LLC's motion to continue the expert report deadline, R. Doc. 58, be and hereby is **DENIED**.

New Orleans, Louisiana, this 31st day of July, 2019.

_____
UNITED STATES DISTRICT JUDGE